McMILLIN and others *v.* ST. LOUIS & VICKSBURGH ANCHOR LINE.[1]

*(Circuit Court, E. D. Missouri.* November 1, 1884.)

PATENTS—USE OF STEAM TO OPERATE CAPSTANS.
    The invention covered by letters patent No. 63,917, granted to John S. McMillin, April 16, 1867, is the use of the freight-hoister or nigger-engine of a vessel, by means of the shafting and gearing described in said patent, to rotate the capstan; and said patent does not extend to the use of an auxiliary engine in the manner described, unless such engine may also be used as a hoisting engine.

1 Reported by Benj. F Rex, Esq., of the St. Louis bar.

In Equity.

*Paul Bakewell,* for complainants.

*Given Campbell* and *Parkinson & Parkinson,* for defendant.

TREAT, J. This and six other cases have been submitted to the court on substantially the same question. Anticipations are alleged with respect to the Charles Belden and the Constitution, it being alleged that, in both these steamers, freight-hoisters or nigger-engines had been used to rotate the capstans. The presumption is in favor of the validity of the patent, which presumption must be overcome by clear and positive testimony. Under some conditions of the cases submitted, it might be doubtful whether that repelling testimony was adequate according to the rule stated. The first inquiry exacts the definition of the patent itself. What did it include? Its language is as follows:

"The nature of my invention consists in connecting the capstan with the freight-hoisting engine, or other engines of steam-boats and crafts, by means of shafts and cog-wheels, so as to operate the capstan by steam-power, instead of hand-power, as has been generally used heretofore."

Then follows a description of the mechanical devices whereby said result can be effected, distinctly describing the hoisting engine and connecting shafts by the usual mechanical devices, whereby the said engine might be connected with or disconnected from the described gearing. The claim is in these words:

"Rotating a capstan placed on the deck of a boat by means of an auxiliary engine, when said engine and capstan are placed forward of the steam-boilers of said boat, substantially as hereinbefore described, and for the purposes set forth."

It is obvious that the invention was not to operate the capstan by the motive force of the main engine. Whence, then, was the motive power to be had and how applied? Evidently by utilizing an auxiliary engine so that the same might perform a double function as occasion required. The patent, therefore, should be limited, as intimated by Judge McKENNAN, to the specified combination, to-wit, the use of the freight-hoister or nigger-engine, by the said shafting and gearing described, to rotate the capstan; said engine and capstan being forward of the steam-boilers. That description evidently excludes the idea that the main engine was to be used. It also excludes the idea that a *separate* engine was to be used to operate the capstan. The thought of the inventor, on which his patent was granted, was not that every contrivance whereby to operate by steam the capstan was to be included in the terms of his patent, for, if so, his patent would have been too broad, and void; therefore it must be limited to the special mode of effecting the desired result. That mode is the utilizing of the freight-hoister or nigger-engine, by appropriate shafting and gearing, to rotate the capstan, and thus escape the futile attempt to utilize the main engine, and at the same time have said auxiliary engine effect, as might be required, the double purpose

stated. Of course, it was an essential requirement that the gearing should be so constructed as to be shipped or unshipped as the use of the capstan might be needed or otherwise.

The defendant's engines to operate capstans are not only separate from the main engines, but constructed as independent engines solely for rotating the capstan. The shafting and gearing, whereby the transmission of power is made from said independent engine to the capstans, may be substantially the same as described in plaintiffs' patent. But, whether so or not, there was nothing new in said mechanical devices, and the plaintiffs' demand did not extend beyond using ordinary contrivances to transmit motive force from the freight-hoister or nigger-engine to the capstan. Hence the patent does not exclude the right to use those mechanical devices in another way or under different circumstances.

The conclusion reached is this: That the rotating of capstans with motive force applied from independent engines, even though placed in front of the boiler, does not infringe plaintiff's patent, although the modes of transmitting the power are substantially by the same and well-known mechanical contrivances. Bill dismissed, with costs.